MORRIS, Judge.
The appellee’s motion for rehearing and clarification is granted in part. The opinion issued on November 8, 2013, is withdrawn, and the following opinion is substituted therefor. No further motions for rehearing or clarification will be entertained.
Stephanie Dowden appeals an order issued by the Reemployment Assistance Appeals Commission affirming the decision of an appeals referee, which determined that Dowden is not entitled to benefits because her unemployment was voluntary without good cause chargeable to her employer. See § 443.151(4)(a), (c), (e), Fla. Stat. *1200 (2012). We conclude that the Commission properly affirmed the referee’s determination that Dowden did not qualify for benefits. However, we reverse and remand for further proceedings on the limited issue of overpayment.
I. Background
Dowden applied for unemployment benefits in June 2011 after losing her job at Publix. On June 29, 2011, Dowden received a “Wage Transcript and Determination” from the Agency for Workforce Innovation, Unemployment Compensation Program, stating that Dowden was eligible for a weekly benefit amount of $208 until June 18, 2012, based on her employment history at Publix. In mid-July 2011, she obtained a job at Dunkin Donuts, but she left that job in late August 2011, because she did not have childcare for her children. Dowden continued to receive unemployment benefits.
In March 27, 2012, Dowden received a document titled “Monetary Determination/Redetermination for Extended Benefits,” which stated that she was eligible for extended benefits. But on May 11, 2012, the Unemployment Compensation Program issued a document stating that Dow-den “voluntarily quit the job [at Dunkin Donuts] due to lack of childcare. The reason for quitting was personal.” The Program determined that the “law requires disqualification from 08/28/11 and until you earn $3,536.” It also stated that “any benefits received for which you were not entitled are overpayments and subject to recovery.” Dowden appealed that determination.
A hearing was held on July 23, 2012, before an appeals referee. At the hearing, Dowden explained that she left her job at Dunkin Donuts because her husband had to leave the country and she had nobody to take care of her two children and she could not afford daycare. Her husband returned after being away for a few months. In closing, Dowden stated that she had “been completely honest with this whole experience in doing unemployment.” She had tried her “best to do everything online that [she was] supposed to do.” She was astonished in May 2012 when she received notice that she would have to pay back the benefits she had received because “[n]o-body from unemployment' ever let [her] know that [she was] doing something wrong.” During the process, she had “been in phone contact with a lot of unemployment people.” She argued that if she had been “doing something wrong[,] somebody from the unemployment side should have a lot earlier caught on to it and let [her] know.” She claimed that she is an honest person, that she did not mean to “mess up anything” or “cheat anybody,” and that she was just trying to feed her children.
The appeals referee issued her decision, affirming the denial of benefits based on a finding that Dowden voluntarily left her employment with Dunkin Donuts because her husband left the country and she had no childcare. The referee also found that Dowden did not return to work at Dunkin Donuts after her husband returned to the country a few months later. The referee concluded that Dowden left her work without good cause attributable to her employer and that she was therefore disqualified from receiving benefits. The decision also stated that if Dowden were determined to be disqualified or “ineligible for benefits already received,” she “will be required to repay those benefits” in an amount to be “set forth in a separate overpayment determination.”
Dowden appealed the referee’s decision to the Commission, which concluded that the record supports the referee’s findings and conclusions of law. Specifically, the *1201 Commission stated that “[although the claimant may have quit for personally compelling reasons, benefits cannot be paid on that basis.”
II. Analysis
The facts as found by the appeals referee are supported by Dowden’s testimony at the hearing. See Ford v. Se. Atl. Corp., 588 So.2d 1039, 1040 (Fla. 1st DCA 1991) ([T]he appeals referee is the fact finder and his or her decision must be upheld if there is CSE [competent, substantial evidence] to support it.” (citations omitted)). Based on the facts, the appeals referee determined that Dowden was not eligible for benefits after August 28, 2011, because she voluntarily left employment with Dunkin Donuts on that date due to lack of child care. Section 443.101(l)(a) provides that “[a]n individual shall be disqualified for benefits” if he or she has “voluntarily left work without good cause attributable to his or her employing unit.”
[T]he term “good cause” includes only that cause attributable to the employing unit which would compel a reasonable employee to cease working or attributable to the individual’s illness or disability requiring separation from his or her work. Any other disqualification may not be imposed. An individual is not disqualified under this subsection for voluntarily leaving temporary work to return immediately when called to work by the permanent employing unit that temporarily terminated his or her work within the previous 6 calendar months, or for voluntarily leaving work to relocate as a result of his or her military-connected spouse’s permanent change of station orders, activation orders, or unit deployment orders.
§ 443.101(l)(a)(l).
Dowden’s reason for voluntarily leaving her employment constitutes a personal reason that is not considered good cause attributable to her employing unit. See Beard v. State Dep’t of Commerce, Div. of Emp’t Sec., 369 So.2d 382, 385 (Fla. 2d DCA 1979) (“[T]he legislature, when it added the phrase ‘attributable to the employer’ to the good cause requirement for voluntary termination, must have intended to remove domestic obligations as good cause for voluntary termination.”); Marchese v. Unemployment Appeals Comm’n, 946 So.2d 123, 124 (Fla. 4th DCA 2007) (recognizing a “family emergency exception” so that an employee may voluntarily take time off work to care for an ill family member or because a death occurred but holding that a mother’s leave of absence because her nanny quit did not constitute good cause attributable to her employer). Therefore, under section 443.101(l)(a), the appeals referee correctly determined that Dowden is not entitled to benefits. See Home Fuel Oil Co. v. Fla. Unemployment Appeals Comm’n, 494 So.2d 268, 270 (Fla. 2d DCA 1986) (“The statute protects employees of only those employers who wrongfully cause their employees to ‘voluntarily’ leave their employment.”). The Commission did not err in affirming the appeals referee’s application of the law to the facts in regard to the conclusion that Dowden was disqualified from benefits.
But the Commission erred in failing to remand the case for an additional hearing on the issue of overpayment. The facts of this case are similar to those in Arensen v. Florida Unemployment Appeals Commission, 48 So.3d 936 (Fla. 1st DCA 2010). In Arensen, the claimant applied for benefits after she lost her job in June 2008. Id. at 937. She was initially told by an agency employee that her benefits could not be approved until after her former employer was contacted.
Two weeks after this eligibility interview, Arensen received a Wage and *1202 Transcript Determination, informing her that she had been approved. She then received regular unemployment benefits until the Spring of 2009. During this time, Ms. Arensen received written confirmation that she was eligible to collect unemployment compensation benefits. The agency sent her a formal notice on December 8, 2008, stating that she was entitled to receive additional benefits under the Emergency Unemployment Compensation Extension Act of 2008. Then, on April 20, 2009, the agency sent her another formal notice stating that she was entitled to receive additional benefits under the Act.
Nine days later, on April 29, 2009, approximately ten months after Arensen began receiving continuous unemployment benefits, the Agency for Workforce Innovation issued a non-monetary Notice of Determination, finding that she had been discharged for misconduct connected with work and that she was therefore ineligible for receipt of benefits. This notice also informed her that she was responsible for repaying the Agency the benefits she had received to date. Finally, the notice advised Aren-sen that she had twenty calendar days from the mailing date of the determination to file an appeal. The agency did not explain why it had failed to make this determination initially. Nor did it explain why it had implied that it had already determined that Arensen was eligible for benefits.
Id. at 937-88. The First District first held that the appeals referee erred in dismissing the claimant’s initial appeal because although it was untimely as to the non-monetary notice denying benefits, it was timely as to the subsequent monetary notices that determined the exact amount of benefits she was required to repay. Id. 989-40. The First District went on to hold that
the agency acted so slowly in this case as to violate due process. Although the limited record suggests that the employer was partly to blame for the procedural delinquency in this case, the agency itself acted in a way that severely prejudiced the claimant. For whatever reason, it paid the claimant for at least ten months before finally notifying her that she was disqualified from receiving the nearly $9,000 in benefits it had paid her up to that point. It then ceased her benefits without affording her notice or an opportunity to be heard on the merits of her claim.
It is true that initial eligibility determinations are frequently issued, followed by the payment of benefits for a short time, which must ultimately be repaid when the agency later determines that the claimant is, in fact, disqualified from receiving benefits when the employer contests the claim in a timely fashion. Here, however, the record indicates in more than one way that, although it did not issue a written non-monetary notice before April 29, 2009, the agency did indeed determine that the claimant was eligible for benefits within two weeks of the date she filed her claim. If not a formal determination, the agency certainly made a de facto determination of eligibility, by force of its actions and the documentation it issued over the course of nearly a year. Thus, the claimant essentially became entitled to the continued receipt of benefits; and the agency suddenly ceased them and demanded repayment on a retroactive finding of ineligibility, all without a hearing. In issuing the nonmonetary notice on April 29, 2009, the agency was, in effect, making a rede-termination, not an initial determination. In so doing, and in dismissing her appeal, it violated her due process rights.
*1203 The prolonged delay in the determination of ineligibility, after the agency took a number of actions leading her to believe that Ms. Arensen had been approved, including paying her benefits for the better part of a year, substantially impaired the fairness of the proceedings. As the record reveals, after filing her claim in June of 2008, Ms. Arensen spoke with an agency employee, who informed her that the agency would have to contact her employer before ruling on her claim. She then received benefits, which would lead her to believe that she was, in fact, eligible. This belief was undoubtedly reinforced by the subsequent notices informing her that she was entitled to receive additional unemployment compensation benefits under an emergency act of Congress.
It is understandable that Ms. Arensen was surprised to learn that her benefits had been disapproved and that she was required to reimburse the agency for the benefits she had been receiving. The nonmonetary determination of ineligibility came almost a year after Ms. Arensen first started receiving payments and little over a week after the latter of two notices confirming her continuing eligibility for benefits under the federal emergency extension act. It appears from the transcript of the telephonic hearing that she was confused not only by the prolonged period of payment of benefits, but also by the multiple notices that she received after the original non-monetary notice.
Id. at 939-41. The court reversed the agency’s decision affirming the appeals referee’s dismissal and remanded for “a hearing on the monetary determination, as well as on the underlying decision,” so that the claimant “could contest both the amount of the overpayment and the original determination of eligibility.” Id. at 941.
Here, Dowden applied for benefits after she lost her job at Publix in June 2011. She was determined eligible for benefits in June 2011, and she began receiving benefits in August 2011. In the meantime, she was hired at Dunkin Donuts, but she left that job in late August 2011. According to Dowden’s unrefuted testimony at the hearing, she was truthful with agency employees and informed them of her reason for leaving Dunkin Donuts. She testified that nobody ever informed her that she would not qualify for continued benefits. She continued to receive benefits for another eight months. Within that time, she received notice in March 2012 that she was “monetarily eligible” for extended benefits. It was reasonable for Dowden to assume that she had been determined to qualify for benefits after leaving her employment with Dunkin Donuts based on the document she received from the agency in March 2012 indicating that she was “eligible,” her communications with agency employees, and her receiving benefits for another eight months.
As noted in Arensen, a claimant may be required to repay benefits that he or she received for a short time while the agency is investigating a claim. Id. at 940. But Dowden received benefits for more than just a short time after she left her job at Dunkin Donuts. There is nothing in the record explaining why the agency delayed so long in making its determination after she left her job at Dunkin Donuts, and we note that the statute clearly requires that when determining eligibility, the agency must act “promptly” when providing notice of claims to employers and the employer must respond within twenty days. § 443.151(3)(b). It can be assumed that this prompt process was not followed in this case. And even though a claimant is generally liable for repaying benefits *1204 which she was not entitled to receive, see § 443.151(6)(b), if the delay in the denial of benefits was caused by Dunkin Donuts’ failure to timely respond, the agency was not permitted to hold Dowden liable for the benefits she was improperly paid, see § 443.151(6)(c) (“Any person who, by reason other than fraud, receives benefits under this chapter to which she or he is not entitled as a result of an employer’s failure to respond to a claim within the timeframe provided in subsection (3) is not liable for repaying those benefits to the department....").[1]
In Arensen, the appeals referee and the Commission never considered the issues of eligibility or repayment because the referee dismissed the initial appeal as untimely and the Commission affirmed that dismissal. Here, the referee made a decision on the issue of eligibility and the Commission affirmed that decision. Even though Dow-den argued that she should not have to repay the benefits she received, neither the appeals referee nor the Commission explicitly considered the issue of repayment. Yet the referee’s order included language determining that Dowden is required to “repay those benefits.” To the extent that the Commission affirmed the referee’s decision without remanding the case for an additional hearing on the issue of repayment, the agency erred as a matter of law in light of the undisputed facts of the case. See § 120.68(7)(d), Fla. Stat. (2012); Krulla v. Barnett Bank, 629 So.2d 1005, 1006 (Fla. 4th DCA 1993) (“[WJhere the commission errs as a matter of law, this court is empowered to reverse their determination.”). Accordingly, we reverse the Commission’s order as it relates to the repayment of benefits and we remand for a new hearing in light of Arensen, section 443.151(6), and the facts in this case. We affirm the Commission’s affirmance of the referee’s determination that Dowden was not entitled to benefits because she voluntarily left her employment without good cause attributable to her employer.
Affirmed in part; reversed in part; remanded.
CASANUEVA and SILBERMAN, JJ., Concur.

. We also note that “[rjecoupment from future benefits is not permitted if the benefits are received by any person without fault on the person’s part and recoupment would defeat the purpose of this chapter or would be inequitable and against good conscience.” § 443.15 l(6)(d).